UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LINDA SUE WINTER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:17-cv-283 ) |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Linda Sue Winter, on June 30, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Linda Sue Winter, filed an application for Disability Insurance Benefits on May 4, 2013, alleging a disability onset date of March 29, 2013. (Tr. 15). The Disability Determination Bureau denied Winter's application on July 19, 2013, and again upon reconsideration on October 31, 2013. (Tr. 15). Winter subsequently filed a timely request for a hearing on November 11, 2013. (Tr. 15). A hearing was held on July 7, 2015, before Administrative Law Judge (ALJ) Brian Saame, and the ALJ issued an unfavorable decision on August 14, 2015. (Tr. 15-23). Winter and Vocational Expert (VE) Jessica Christensen testified at the hearing. (Tr. 15). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-9). Winter met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 17).

The ALJ issued an unfavorable decision and made findings as to each of the steps in the five-step sequential analysis. (Tr. 15-23). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Winter had not engaged in substantial gainful activity since March 29, 2013, the alleged onset date. (Tr. 17).

At step two, the ALJ determined that Winter had the following severe impairments: lumbar spinal stenosis with radiculopathy, status post lumbar fusion at L4/5, left foot fracture, and obesity. (Tr. 17). At step three, the ALJ concluded that Winter did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ considered Winter's lumbar spinal stenosis with radiculopathy, status post lumbar fusion at L4/5, and left foot fracture under Listings 1.02 and 1.04. (Tr. 18). He found that the medical evidence did not document listing-level severity. (Tr. 18). Specifically, the ALJ indicated that the record was devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation. (Tr. 18). The ALJ noted that Winter's obesity seriously complicated her musculoskeletal and cardiovascular co-morbidities. (Tr. 18). Therefore, the ALJ indicated that the combined effects of Winter's impairments resulted in greater limitations than without her obesity. (Tr. 18). However, the ALJ found that Winter could ambulate effectively. (Tr. 18).

After careful consideration of the entire record, the ALJ then assessed Winter's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform restricted sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift/carry and push/pull 10 lbs. occasionally. In an 8-hour workday, she can stand/walk 2 hours and sit 6 hours. She is unable to climb ladders, ropes, or scaffolds. She can occasionally stoop, balance, kneel, couch, crawl and climb ramps/stairs.  She must be allowed an option to use a cane on the

> left for walking/balancing. The claimant should avoid all exposure to
> hazards such as slippery/uneven terrain, moving surfaces or unprotected
> heights.

(Tr. 18). The ALJ explained that in considering Winter's symptoms he followed a two-step process. (Tr. 19). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Winter's pain or other symptoms. (Tr. 19). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Winter's functioning. (Tr. 19). The ALJ found that after careful consideration of the evidence, Winter's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 19). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 19).

At step four, the ALJ found that Winter was capable of performing her past relevant work as a secretary. (Tr. 22). The ALJ indicated that Winter's work as a secretary did not require the performance of work-related activities precluded by her residual functional capacity. (Tr. 22). Because the ALJ found that Winter was capable of performing her past relevant work, he did not proceed to step five. (Tr. 22). The ALJ found that Winter had not been under a disability, as defined in the Social Security Act, from March 29, 2013 through August 14, 2015, the date of this decision. (Tr. 23).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of

Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly

4

limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f)**.

Winter has requested that the court reverse the ALJ's decision and award benefits, or in the alternative remand for additional proceedings. In her appeal, Winter has argued that the ALJ: (1) arrived at an unsupported conclusion at step three; (2) provided an RFC that was not supported by substantial evidence; and (3) improperly addressed her subjective complaints.

First, Winter has argued that the ALJ failed to properly support his finding at step three. At step three, the ALJ concluded that Winter did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P. (Tr. 18). The ALJ specifically considered Listings 1.02 and 1.04. However, he determined that the medical evidence did not document listing-level severity. (Tr.

18).  The ALJ indicated that the record was devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation.  (Tr. 18).

Winter has argued that the ALJ arrived at his conclusion without support from a medical expert.  Winter has indicated that the ALJ cannot rely on the State agency review to support his finding that Winter did not meet Listing 1.02.  The State agency review did not reference Listing 1.02, major dysfunction of a joint.  Moreover, Winter contends that at the time of the review the State agency did not have records of her knee surgery and that the review was prior to the vast majority of the evidence, including documentation of her left foot impairments.  The Commissioner has not addressed this argument.

Furthermore, Winter contends that the ALJ's statement regarding the record being devoid of evidence of spinal stenosis and ineffective ambulation was inaccurate.  Winter has pointed to evidence in the record that, contrary to the ALJ's statement, multiple MRI's of her lumbar and thoracic spine documented stenosis.  (Tr. 282, 598-601, 948-949).  The ALJ also failed to address that Winter's treating physician, Dr. Kadakia, opined that Winter met Listing 1.02 (Tr. 937-938).  Moreover, the ALJ offered no explanation or analysis regarding his assertion that Winter was able to ambulate effectively.

For a claimant to show that she meets a listed impairment, she must demonstrate that her impairment meets each required criterion, and she bears the burden of proof in showing that her condition qualifies.  ***Maggard v. Apfel***, 167 F.3d 376, 380 (7th Cir. 1999).  A condition that meets only some of the required medical criteria, "no matter how severely," will not qualify as meeting a listing.  ***Sullivan v. Zebley***, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).  The Seventh Circuit has not required a lengthy articulation at step three.  ***Wurst v. Colvin***, 520 F. App'x 485, 488 (7th Cir. 2013) ("The ALJ's [one-sentence] analysis here was

cursory, but it was nevertheless supported by substantial evidence that Wurst could ambulate effectively."). However, "in considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015). "[A] failure to do so . . . may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Listing 1.02, major joint dysfunction, required Winter to demonstrate an impairment

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

**20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02**.

Listing 1.04, disorders of the spine, required Winter to demonstrate a spine disorder that compromised a nerve root (including the cauda equine) or the spinal cord. **20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04**. Additionally, the spine disorder must have

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging,

>manifested by chronic nonradicular pain and weakness, and
>resulting in inability to ambulate effectively, as defined in 1.00B2b.

**20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04**.

The key phrase—"inability to ambulate effectively"—is defined in Listing 1.00B2b as follows:

>(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity function [ ] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
>
>(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out the activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The inability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

**Listing 100.B2b(1) & (2).**

The Commissioner has argued that despite the ALJ's discussion at step three being brief he considered both Listings 1.02 and 1.04. Moreover, the Commissioner asserts that Winter has acknowledged that there was significant contradictory evidence in the record regarding whether or not she met a listing, so substantial evidence supports the ALJ's finding. However, after the ALJ's routine statement that Winter did not meet Listings 1.02 and 1.04, he did not further discuss the requirements of the listings. The ALJ's decision indicated that the record was devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with

accompanying ineffective ambulation. (Tr. 18). This sentence simply lists some of the requirements of Listing 1.04. This is the type of "perfunctory analysis" that the Seventh Circuit repeatedly has found inadequate. *See Minnick*, 775 F.3d at 935.

Moreover, the ALJ did not address Dr. A. Kadakia's opinion that Winter met Listing 1.02. (Tr. 937-939). Because there is objective medical evidence that the ALJ did not address which supports a finding that is inconsistent with the ALJ's conclusion, the court cannot properly review the ALJ's decision. The ALJ was unable to rely on the State agency findings because they only considered Listing 1.04. Moreover, the ALJ indicated that the record was devoid of evidence of spinal stenosis as well as a lack of evidence of ineffective ambulation. However, contrary to the ALJ's finding, Winter has pointed to MRI's of the lumbar and thoracic spine that documented spinal stenosis multiple times. (Tr. 282, 598-601, 948-949). Also, there is documented observations of poor and abnormal gait and use of a cane or walker at times. (Tr. 585, 696, 1901, 1928, 1959, 2027). Therefore, the court is unable to conclude that the ALJ's analysis at Step 3 was supported by substantial evidence. On remand, the ALJ should offer more than a perfunctory analysis of Listings 1.02 and 1.04.

Next, Winter has argued that the ALJ's residual functional capacity was not supported by substantial evidence because the ALJ failed to address impairments in the record and discounted treating source opinions with little analysis. SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must

> discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

Winter has argued that the ALJ failed to address multiple impairments in the record. The Commissioner concedes that the ALJ overlooked Winter's fibromyalgia as a non-severe impairment. Specifically, the Commissioner acknowledged that the ALJ overlooked evidence that Winter's rheumatologist documented greater than 11 tender points on at least two occasions. (Tr. 2029, 2036). Additionally, Winter has argued that the ALJ misrepresented the evidence as it relates to her right knee pain and thoracic spine. The Commissioner contends that even if Winter's knee pain and thoracic spine should have been found to be severe impairments this

would not be reversible error because these impairments were fully accounted for in the ALJ's limited RFC finding. The ALJ is required to consider the aggregate effect of the entire constellation of ailments, including those impairments that in isolation are not severe. ***Golembiewski v. Barnhart***, 322 F.3d 912, 918 (7th Cir. 2003). The ALJ cannot ignore entire lines of evidence or cherry pick the evidence that is favorable to a finding of non-disability. ***Golembiewski***, 322 F.3d at 917. A failure to fully consider the impact of non-severe impairments requires reversal. *See **Golembiewski**,* 322 F.3d at 918. Therefore, the failure to consider Winter's fibromyalgia was improper.

Moreover, the ALJ assigned little weight to the opinions of Winter's treating physicians, Dr. Gentile and Dr. Kadakia, and did not assign any weight to Dr. Khanna's opinion because he found that it did not address any functional limitations. The Commissioner contends that the ALJ "implicitly" accorded no more than little weight to the opinion of Dr. Khanna. Winter has argued that the ALJ discounted these opinions with minimal articulation and did not provide "good reasons."

A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(c)(2)**; *see* ***Bates v. Colvin***, 736 F.3d 1093, 1099 (7th Cir. 2013); ***Punzio v. Astrue***, 630 F.3d 704, 710 (7th Cir. 2011); ***Schmidt v. Astrue***, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000) (quoting ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)).

11

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." *Bates*, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 Fed. App'x 963, 970-71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 Fed. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see Punzio*, 630 F.3d at 713.

If the ALJ decides that the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment

relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area. An ALJ need not explicitly march through every factor, so long as his decision shows that he "was aware of and considered many of the factors." *Schreiber v. Colvin*, 519 Fed.Appx. 951, 959 (7th Cir. 2013).

The ALJ afforded Dr. Gentile's opinion little weight because "[s]he apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what claimant reported." (Tr. 21). Winter has argued that the ALJ has failed to provide any explanation of how he arrived at this conclusion. Additionally, the ALJ discounted Dr. Gentile's opinion because it was issued prior to Winter's February 27, 2015, fusion surgery. Yet, the ALJ assigned great weight to the residual functional capacity conclusions reached by the State Disability Determination Services whose opinions also were formed prior to Winter's fusion surgery and a vast majority of the period of disability in question.

The court finds that the ALJ has failed to consider the factors for weighing a medical opinion as described in 20 C.F.R. § 404.1527(c). The ALJ made no reference to the nature and length of Winter's treating relationship, the tests performed, or the consistency and supportability of the opinion with the medical evidence in the record. Therefore, the court is unable to trace the ALJ's path of reasoning. Also, the ALJ failed to apply the same scrutiny to Winter's treating physicians that he applied to the State Disability Determination Services.

The Commissioner continuously has argued that the errors found in the ALJ's RFC are harmless because the ALJ assigned a very limiting RFC finding. However, the ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *Diaz v. Chater*,

13

55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). "The ALJ is not required to address every piece of evidence or testimony in the record, [but] the ALJs analysis must provide some glimpse into the reasoning behind [the] decision." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Therefore, the court finds that the ALJ has not supported his RFC finding with substantial evidence.

Finally, Winter has argued that the ALJ improperly addressed her subjective complaints. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ must make explicit findings and explain them "in a way that affords meaningful review," or the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see Bates*, 736 F.3d at 1098.

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. § 404.1529(a)**; *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's

14

impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. § 404.1529(c);** *see Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not disregard an individual's statements about symptoms solely based on objective medical evidence. SSR 16-3p, at *5[1]; *see* **Moore v. Colvin**, 743 F.3d 1118, 1125 (7th Cir. 2014) ("'[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence.'") (quoting *Indoranto*, 374 F.3d at 474); **Carradine v. Barnhart**, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

---

[1] The Social Security Administration updated its guidance about evaluating a claimant's symptoms. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). SSR 16-3p superseded SSR 96-7p and removed the term "credibility" from the Administration's policies. SSR 16-3p at *1. The new policy clarifies that an ALJ should not examine a claimant's character similar to an adversarial proceeding when evaluating the claimant's subjective symptoms. SSR 16-3p at *1. Although SSR 16-3p post-dates the ALJ hearing in this case, a regulation that clarifies rather than changes existing law is appropriate on appeal. *Pope v. Shalala*, 998 F.2d 473, 482–83 (7th Cir. 1993), *overruled on other grounds by* **Johnson v. Apfel**, 189 F.3d 561 (7th Cir. 1999). Because SSR 16-3p clarifies the Administration's policies, this court will evaluate the ALJ's findings under the Administration's new guidance. *See* **Roper v. Colvin**, 2016 WL 3940035, at *3 (N.D. Ill. July 21, 2016) (finding it appropriate to consider the new regulation on appeal).

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. He must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9; *see Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) ("[A] failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal.") (citations omitted); *Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). The ALJ is required to build an accurate and logical bridge from the evidence to his conclusion. *Zurawski*, 245 F.3d at 887 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). A minor discrepancy, coupled with the ALJ's observations is sufficient to support a finding that the claimant was incredible. *Bates*, 736 F.3d at 1098. However, this must be weighed against the ALJ's duty to build the record and not to ignore a line of evidence that suggests a disability. *Bates*, 736 F.3d at 1099.

The ALJ found that "the medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these statements are not entirely credible for the reasons explained in this decision." (Tr. 19). The Seventh Circuit has cautioned that this phrase is "meaningless," because it fails to explain what the ALJ relied upon in making his determination. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). The Commissioner has acknowledged that "the ALJ's discussion could have been more detailed."

The ALJ did not address why he found that Winter was not entirely credible nor did he offer any evidence in support of his determination. The Commissioner contends that despite the relatively brief discussion the ALJ considered Winter's subjective complaints to a significantly greater degree than Winter acknowledged. The Seventh Circuit has made it abundantly clear that disability determinations cannot be based entirely on the results of medical tests. *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015). The ALJ's reasoning must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. On remand, the ALJ should reevaluate Winter's subjective complaints pursuant to SSR 16-3p.

Winter has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court

compels an award of benefits. ***Briscoe v. Barnhart***, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 28th day of August, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge